

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CINQUE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3678 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| DR. HELEN KIM, DR. ANDREW WOLFE, | ) | |
| and THE UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Cinque Robinson sues his former employer, The University of Chicago ("the university"), and his former supervisors, Dr. Helen Kim ("Kim"), and Dr. Andrew Wolfe ("Wolfe"), for race and color discrimination. His claims arise under 42 U.S.C. § 1981 ("§ 1981") against all defendants, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII") against the university.[1] Defendants move for summary judgment on all remaining counts pursuant to Federal Rule of Civil Procedure 56.

---

[1]Robinson's response seeks to reopen his ADA claim for trial. The court dismissed his ADA claim against the individual defendants on August 27, 2004, and against the university on November 19, 2004. Although Robinson has not formally moved for reconsideration of the dismissal orders, the court liberally construes his *pro se* pleading. Even liberally construing his response, Robinson provides no basis for reconsideration of the dismissal orders. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

1

## BACKGROUND

**I.      Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *see also Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993); *Wiskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir.1994) (only admissible evidence may be considered on summary judgment).

Defendants filed and served a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required under Local Rule 56.2. Robinson is therefore required to comply with Local Rule 56.1 despite his *pro se* status. *See Morris v. IBM Global Services*, 2005 U.S. Dist. LEXIS 897, at *3 (N.D. Ill. Jan. 13, 2005); *Fisher v. Ameritech*, 2002 U.S. Dist. LEXIS 15643, at *11 (N.D. Ill. Aug. 22, 2002). Robinson submitted a response to each numbered paragraph in defendants' statement, but his response fails to contain record citations for each denial. *See* ¶¶ 18, 40, 41, 45, 46, 48, 49, 52, 54, 74, 77, 78. In other instances, Robinson cites inadmissible evidence to support a denial, such as statements made in his legal briefs. *See Buck v. Lake County Sheriff*, 2004 U.S. Dist. LEXIS 25880, at * 4 (N.D. Ill. Dec. 20, 2004) (statements made in legal briefs are not admissible evidence). The court must accept as true any relevant and properly supported facts set

forth in defendants' statement that Robinson denied, but failed to support with proper record citations. *Fisher*, 2002 U.S. Dist. LEXIS, at *12.

## II. Facts

The following facts are undisputed unless otherwise noted. On August 9, 2002, Robinson, an African-American, began working for the university as a full-time junior research technician at one of its laboratories. Wolfe, who is Caucasian, and Kim, an Asian-American, interviewed him before he was hired and supervised him throughout his tenure at the laboratory. They allowed him to work a flexible full-time schedule to accommodate his class schedule. He was allowed to work 8:30 a.m. until 12:30 p.m. on Mondays and Fridays, and to make up the remaining hours after class or on weekends.[2]

Robinson's job duties included keeping mice cages in order, setting up mice for mating, euthanizing mice, conducting mouse genotyping and updating the database. Robinson admittedly made numerous mistakes during his five months on the job. He incorrectly performed a step in the mouse genotyping process, causing subsequent errors in the process. Wolfe discovered this mistake in late August 2002.

Robinson did not complete his work on time. Wolfe and Kim verbally counseled him in early October about working too slowly. During the conversation, Robinson agreed that a backlog of work had accumulated in the laboratory because he had not completed his work.

In early November, Kim and Wolfe again counseled Robinson about his job performance. Kim sent him an email memorializing the conversation and outlining his job expectations. Despite

---

[2]Robinson claims he was initially allowed to make up hours after class, but was later told he had to make them up on the weekends.

3

counseling, Robinson continued to have performance problems. For example, he mistakenly killed two mice. His mistake caused a setback in the laboratory's research. He also failed to timely euthanize the mice. There was a backlog of work in the laboratory as a result of Robinson's inefficiencies.

In November 2002, Wolfe and Kim counseled Robinson several times both verbally and in writing about his performance problems. Nevertheless, his performance did not improve, and he became insubordinate. Around November 12, Robinson sent Wolfe and Kim an email stating, "I think you [Wolfe] deserve to be yelled at–by me in particular. And so I do." Robinson "yelled at" Wolfe for not doing Robinson's work. Response, Exhibit B, Section B, p. 8. On November 13, he sent Kim an email stating "don't you ever accuse me again, the way that you did [yesterday], of not doing something that is not my job to begin with." Response, Exhibit B, Section B, p. 9. On the same day, Wolfe and Kim issued Robinson a written "Notice of Corrective Action" as a result of his unsatisfactory performance and insubordination.

Despite the corrective notice, Robinson's performance still did not improve. He did not update the database on a daily basis. He arrived late for work on December 9 and 10, and continued to fall behind in his work. On December 6 and 9, Wolfe had to do Robinson's work because Robinson did not complete it on time. On December 10, Robinson threatened to make a citizen's arrest against Wolfe.

On December 13, Wolfe and Kim issued Robinson a second "Notice of Corrective Action" because of his insubordination, tardiness and unsatisfactory performance. As a result of the second notice, he was suspended pending an investigation. Wolfe and Kim decided to terminate his

employment because they believed he was incapable of performing his job to their satisfaction. The University terminated his employment effective January 4, 2003.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). "[A] *pro se* litigant does not escape the essential burdens necessary to avoid summary judgment." *Cavalieri-Conway v. L. Butterman & Assoc.*, 992 F. Supp. 995, 1001 (N.D. Ill. 1998).

### II. Analysis

#### A. Robinson's Race and Color Discrimination Claims.

Robinson alleges defendants discriminated against him on account of his race and color by: (1) terminating his employment; (2) violating an implied agreement to allow him to work a certain schedule; and (3) harassing him concerning his job performance and attendance. The court applies the same standards in assessing liability under Title VII and §1981. *Bennet v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002). To prove race discrimination, a plaintiff must proffer either direct or indirect evidence of the employer's discriminatory intent. *Id.* at 694. Direct evidence may include an

5

employer's open acknowledgment of racial hostility or racial epithets sufficiently connected to the challenged employment decision. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994); *Perdomo v. Browner*, 67 F.3d 140, 144, n. 1 (7th Cir. 1995). Robinson admits no one made any racial comments to him. He argues the documentary evidence attached to his response provides direct evidence of race discrimination. Specifically, he claims statements made by Wolfe and Kim about his co-workers resenting his work schedule provide direct evidence of race discrimination. These statements do not show any racial hostility on the part of Wolfe or Kim (or anyone else), nor are they connected to the challenged employment decisions. The documents attached to Robinson's response do not contain direct evidence of race discrimination.

Under the indirect method, Robinson must present evidence sufficient to establish a *prima facie* case of defendants' discriminatory motive. Robinson must show: (1) he belongs to a protected class; (2) he met defendants' legitimate performance expectations; (3) he suffered an adverse employment action; and (4) defendants treated similarly situated employees outside the protected class more favorably. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). If Robinson is able to satisfy all four elements of his *prima facie* case, the burden of production shifts to defendants to identify a nondiscriminatory reason for the actions taken. *Myrick v. Aramark Services, Inc.*, 2005 U.S. App. LEXIS 575, at *8 (7th Cir. Jan. 12, 2005). If defendants articulate such a reason, Robinson will avoid summary judgment only if he can produce evidence that the reason given is pretextual. *Id.*

Defendants argue summary judgment should be granted because there is no genuine issue of material fact that: (1) Robinson met their legitimate expectations; (2) a similarly situated non-

African-American employee was treated more favorably; and (3) defendants' stated reasons were pretextual.

### 1. Defendants' Legitimate Expectations.

Robinson has failed to meet his *prima facie* burden of showing that he met defendants' legitimate performance expectations. As set forth above, there is no dispute Robinson made numerous mistakes and did not complete his work on time. There is also no dispute Robinson "yelled at" Wolfe and engaged in other conduct Wolfe and Kim considered insubordinate. Absent evidence that Robinson met defendants' legitimate expectations, he cannot establish a *prima facie* case of race discrimination. *See Harvey v. Maytag Corp.*, 2004 U.S. App. LEXIS 15408, at * 17 (7th Cir. July 23, 2004); *Gulley v. Rockford Memorial Hospital*, 1995 U.S. App. LEXIS 12079, at *14 (7th Cir. May 19, 1995).

### 2. Adverse Employment Action.

Robinson claims defendants discriminated against him by changing his work schedule so that he could no longer work after class on Mondays and Fridays. An adverse employment action must be materially adverse, not merely an inconvenience. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). A change in work hours is not an actionable adverse employment action. *Id.* As a matter of law, Robinson cannot establish that he suffered an adverse employment action as a result of having to make up his hours on the weekends instead of at night.

### 3. Similarly Situated Employees.

Robinson claims he was similarly situated to Geary Smith ("Smith"), Robyn Deneau ("Deneau") and Sally Hall ("Hall"). He claims they were treated more favorably than he because

7

Wolfe and Kim did not issue them a notice of corrective action or terminate their employment.[3] To be similarly situated, employees must be directly comparable in all material respects. *Myrick v. Aramark Services, Inc.*, 2005 U.S. App. LEXIS 575, at *10 (7th Cir. Jan. 12, 2005). In cases where a plaintiff claims he was disciplined more harshly than a similarly situated employee, he must show he is similarly situated with respect to performance, qualifications and conduct. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).

Robinson claims Smith, Deneau and Hall were "accused by Wolfe and Kim of the exact same violations–poor work performance and poor attendance." Response, p. 5. Robinson does not provide a record citation for the statement. However, a document attached to his response contains evidence Smith and Deneau began working reduced hours and became increasingly unproductive after Robinson was hired. Exhibit B, Section E, p. 17-18. Wolfe and Kim sent them a disciplinary email as a result. There is no evidence they received a notice of corrective action or were suspended or terminated for their performance.

This evidence does not create a genuine issue of material fact whether Robinson was similarly situated to Smith, Deneau or Hall. First, all three co-workers had more seniority than Robinson. Second, there is no evidence any of them "yelled at" a supervisor, threatened a supervisor with a citizen's arrest or responded to a reprimand by stating "don't you ever accuse me again," or comparable insubordinate conduct. Third, there is no evidence they were counseled more than nine times in a five month period. Fourth, Smith, Deneau and Hall had proven themselves capable of

---

[3]Robinson also claims they were treated more favorably because Wolfe and Kim allowed them to work the schedule they requested. As set forth above, this claim is not actionable. Even if it were, there is no evidence Smith, Deneau or Hall were treated more favorably regarding work schedules. There is no evidence they were allowed to work a more flexible schedule than Robinson worked.

8

performing the job. They had received good to excellent performance reviews prior to August 2002. Robinson, on the other hand, had performance problems throughout his employment. Absent evidence that a similarly situated non-African-American employee was treated more favorably, Robinson cannot establish a *prima facie* case of race discrimination. *See Radue*, 219 F.3d at 619.

Because Robinson has not met his *prima facie* burden, summary judgment must be granted in defendants' favor on his race and color discrimination claims.

### 4. Pretext.

Even if Robinson met his *prima facie* burden, summary judgment must still be granted because he has not produced evidence of pretext. Defendants articulated non-discriminatory reasons for Robinson's discipline, suspension and termination: poor work performance, attendance problems and insubordination. Robinson has not advanced any evidence that these stated reasons are a pretext for race discrimination. To demonstrate pretext, Robinson must produce significantly probative admissible evidence from which the trier of fact could infer that defendants' reasons are false and that the actual reason for termination was discriminatory. *Stone v. Mid Indiana Service Co., Inc.*, 2004 U.S. App. LEXIS 23322, at *7 (7th Cir. Nov. 4, 2004). To show pretext, Robinson must show defendants' reasons are unworthy of belief. *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004). To meet this standard, Robinson may show that the proffered reasons are factually baseless, were not the actual motivation for the actions taken or were insufficient to motivate the actions taken. *Id.*

Robinson has produced no evidence from which a trier of fact could find pretext. There is no evidence Wolfe and Kim did not honestly believe Robinson performed poorly, had attendance problems and was insubordinate. *See Reed v. Lawrence Chevrolet, Inc.*, 2004 U.S. App. LEXIS

16186, at *14 (7th Cir. Aug. 3, 2004) (even if employer's decision is "'mistaken, ill-considered or foolish,' pretext has not been shown 'so long as [the employer] honestly believed those reasons.'"). Nor is there any evidence suggesting these reasons were not the actual motivation for the actions taken or that they were insufficient grounds for discipline, suspension and termination. Because Robinson has no evidence of pretext, summary judgment must be granted on his race and color discrimination claims for this reason as well.

**B.     Racial Harassment**

Robinson claims he was racially harassed concerning his job performance, attendance and work schedule. Title VII prohibits an employer from engaging in harassment that creates a hostile or offensive working environment for employees based on their race. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). For a hostile work environment claim "to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir.1998), *quoting McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir.1996). Whether harassment is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. These standards "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998), *citing Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

Robinson cannot establish the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. He admits he was

not subjected to any racial comments. He complains that he was harassed about his work schedule, attendance and performance. But he offers no evidence that the alleged harassment was because of his race. Rather, his complaints involve normal workplace friction, which are neither severe nor pervasive enough to constitute racial harassment. *See Herron v. Daimlerchysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004). Based on the totality of circumstances, a reasonable jury could not conclude the alleged conduct was so severe or pervasive as to constitute an actionable hostile work environment.

## CONCLUSION

The material facts are undisputed. For the foregoing reasons, defendants are entitled to judgment as a matter of law.

February 8, 2005

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge